UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JOSE RUBEN HERNANDEZ GOMEZ, <br> Plaintiff, <br> v. <br> MOISES BECERRA, et al., <br> Defendants. | Case No. 23-cv-01330-WHO <br><br> **ORDER GRANTING RELIEF** <br> Re: Dkt. Nos. 1, 5 |

Petitioner Jose Ruben Hernandez Gomez ("Hernandez Gomez") filed a Petition for a Writ of Habeas Corpus and a Motion for a Temporary Restraining Order on March 22, 2023. Dkt. Nos. 1, 5. He argues that continued denial of a constitutionally compliant bond hearing violates his due process rights. He has spent over sixteen months in immigration detention without a bond hearing and he is medically unstable. His motion for a Temporary Restraining Order ("TRO") asks me to require the government to release him or immediately afford him a constitutionally compliant bond hearing. Dkt. No. 5.

The government opposes the TRO and Petition, arguing that I lack jurisdiction over the Petition, a TRO cannot seek the ultimate relief of release, and Hernandez Gomez is not entitled to release or a bond hearing; if he is, it asserts that the burden of proof as to danger to others and flight risk should be placed on him. Dkt. No. 13.

On April 4, 2023, I held a hearing to address both the Petition and motion for a TRO. Having reviewed the arguments made and records in this case, I GRANT the TRO and Petition in limited part, requiring the government to provide Hernandez Gomez with a constitutionally sufficient bond hearing – with the burden of proof on the government to show by clear and convincing evidence that Hernandez Gomez remains a flight risk or danger to the community – no later than April 18, 2023.

**BACKGROUND**

Hernandez Gomez has been in federal custody since November 26, 2021, when upon being released from state custody on a state court conviction for battery and assault, he was taken into custody by U.S. Immigration and Customers Enforcement ("ICE") pursuant to 8 U.S.C. § 1126(c). ICE placed him into removal proceedings as a noncitizen convicted of an aggravated felony crime of violence. Under 8 U.S.C. § 1226(c), detention is mandatory.

Hernandez Gomez, who alleges he came to the United States as a toddler and became a legal permanent resident when he was eight years old, has had numerous arrests and convictions since 2010. They include robbery, evading a police officer, driving under the influence and vehicle code issues, making a false workers compensation claim, and in 2017 battery with an enhancement for infliction of great bodily injury. *See* Government' Opposition to Motion for Temporary Restraining Order and Return to Writ of Habeas Corpus ["Oppo.," Dkt. 13] at 2-3; Declaration of Deportation Officer Sanchez [Dkt. No. 13-1] at ¶¶ 29-32. He asserts that his last conviction was the result of his former co-worker harassing him and his family, and notes that his probation officer identified it as an isolated event and recommended a probationary sentence. Petition ¶ 24. Hernandez Gomez served his sentence at the California Substance Abuse Treatment facility, completed forestry and firefighter training, completed other rehabilitative programs, and was released early for good behavior. *Id*. ¶ 25. Upon his release from state custody on November 26, 2021, he was detained by ICE and has been held in detention pursuant to 8 U.S.C. § 1226(c) without a bond hearing since.

The government alleges that prior to his detention and at some point "after his arrival to ICE custody, ICE conducted a custody review to assess whether Hernandez Gomez's detention was warranted" as a threat to public safety. Sanchez Decl. ¶¶ 33, 35. DHS concluded that detention was warranted because he would constitute a threat to public safety if released. *Id*. He has had numerous appearances before immigration judges ("IJs") since that time but has never been afforded a bond hearing. The government points out that the duration of his proceedings at the IJ level is due in significant part to request for continuances made by him so that he could seek counsel, his counsel could prepare for the hearings, and his counsel could file requests for relief

1    from removal. In January 2022, an IJ determined that Hernandez Gomez was removeable as
2    charged, but that determination was overturned on appeal to the BIA and remanded in June 2022.
3    Sanchez Decl. ¶¶ 7-13. In the nine plus months since the case was remanded, his counsel has
4    again asked for extensions to prepare, delays have been caused by COVID quarantines and
5    connectivity issues preventing Hernandez Gomez's hearings from occurring, and finally the need
6    to complete a competency inquiry. *Id*. ¶¶ 14-23. According to the government's calculations, at
7    least 84 days of delay prior to the initial IJ removability determination were due to his counsel's
8    requests for continuances. In the nine months plus since remand from the BIA, plaintiff requested
9    six months of continuances and another 35 days were due to COVID quarantines. Oppo. at 12-13.

    Hernandez Gomez has recently begun to suffer from serious medical conditions, likely the
result of a hunger strike he and others detained at Mesa Verde started in February 2023 and ended
in March 2023. During that time, he was forcibly transferred to El Paso ICE Processing Center to
receive a purported "higher level of medical care." *Id*. at ¶¶ 45-48. He alleges that while in El
Paso he was threatened with forced feeding and forced hydration if he did not resume eating. On
March 9, 2023, he broke his 20-plus-day hunger strike by which time he had lost 19 pounds
(approximately 10% of his body weight). *Id*. ¶ 48. He alleges that he was not fed or hydrated
properly at that point and was taken back to Mesa Verde around March 14, 2023. *Id*. ¶ 52. On
that date he received emergency room treatment for dizziness and vertigo. He was evaluated for
possible "Refeeding Syndrome," a "potentially fatal shift in fluids and electrolytes that may occur
in malnourished patients" who begin feeding again. *Id*.

    Since March 14, 2023, Hernandez Gomez has returned to the Mercy Hospital emergency
room again with ongoing neurological symptoms and has been diagnosed with "acute
encephalopathy, dehydration" and pneumonia. At the time the TRO was filed, he was in medical
isolation at Mesa Verde. *Id*. ¶¶ 54-56. Between the filing of the TRO and the reply in support,
Hernandez Gomez's health has continued to deteriorate and is now wheelchair bound with
worsening neurological symptoms. *See* Reply Ex. AA (Letter from Mary Cheffers, MD, Clinical
Associate Professor, Emergency Medicine Keck Medical Center of USC).

    In his habeas petition, Hernandez Gomez contends that his prolonged, continued detention

3

without a bond hearing is unconstitutional as applied to him as violating his due process rights. He urges that the prolonged nature of his detention combined with the recent and very serious deterioration of his medical condition, requires habeas relief; namely release or the holding of a constitutionally compliant bond hearing.

## DISCUSSION

### I. JURISDICTION

The government argues first that this court lacks jurisdiction to hear Hernandez Gomez's habeas claim, because jurisdiction exists only in the Eastern District of California; the district where Hernandez Gomez is confined. I rejected a materially similar argument in *Ameen v Jennings*, Case No. 22-cv-0140, Dkt. No. 31 (April 19, 2022 Order). Numerous other decisions from my colleagues in this District have agreed. *See Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *5 (N.D. Cal. Nov. 18, 2022) (collecting cases finding jurisdiction in the Northern District over immigration habeas petitions filed by persons detained within the Eastern District); *see also Pham v. Becerra*, Case No. 23-cv-01288-CRB, Dkt. No. (March 31, 2023 Order) (same).

Respondent identifies no facts particular to Hernandez Gomez's situation that would lead to a different result.[1] I have jurisdiction to hear his Petition and TRO.

### II. ENTITLEMENT TO A BOND HEARING

Having determined that I have jurisdiction, I GRANT the TRO and Petition in limited respect.[2] As an initial matter, I reject the government's argument that because Hernandez Gomez is held under § 1226(c) where detention is required by statute, and not under § 1226(a), he has no

---

[1] To the contrary, Hernandez Gomez supplies evidence that his most recent release requests were addressed at the San Francisco regional office and were forwarded to "Becerra." *See* Declaration of Genna Beier [Dkt. No. 14-1] ¶¶ 4, 10.

[2] Hernandez Gomez and the government dispute whether he should have filed a motion for a TRO seeking the "ultimate" habeas relief of release or whether he should have instead sought an expedited hearing on the Petition itself. But that dispute does not matter given my resolution herein and that the government filed an opposition to the TRO combined with the return on the Petition. Dkt. No. 13. Both procedural mechanisms lead to the same place; my determination based on this record that Hernandez Gomez is entitled to a constitutionally compliant bond hearing.

4

1  due process right to a bond hearing. That argument has been consistently rejected by decisions in
2  this District where my colleagues have explained that a petitioner being held under § 1226(c) may
3  make an as-applied due process argument to support a request for a bond hearing. *See, e.g., Pham*
4  *v. Becerra*, Case No. 23-cv-01288-CRB, Dkt. No. (March 31, 2023 Order) at 9 (noting as applied
5  challenges to the constitutionality of continued detention may be brought by individuals detained
6  under § 1226(c)); *Perera v. Jennings*, 598 F. Supp. 3d 736, 744 (N.D. Cal. 2022) (allowing as-
7  applied challenge to detention under § 1226(c)).

8  However, I reject Hernandez Gomez's position that I should adopt and apply a "bright-
9  line" test and conclude that persons detained under § 1226(c) are entitled to a bond hearing after
10 six months or some other specific period. *See* TRO at 6-7; Reply at 13. Instead, I will consider
11 his individualized claim for relief under the balancing test of *Mathews v. Eldridge*, 424 U.S. 319
12 (1976). *See, e.g., Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *8 (N.D.
13 Cal. Nov. 18, 2022) ("Absent controlling authority establishing a bright-line rule for a due process
14 right to receive periodic bond hearings, the court finds that it is appropriate to conduct an
15 individualized due process analysis under *Mathews*. . . ."); *Perera v. Jennings*, No. 21-CV-04136-
16 BLF, 2021 WL 2400981, at *4 (N.D. Cal. June 11, 2021) (conducting as-applied analysis to
17 detention under § 1226(c)).

18 Under *Mathews*, courts consider (1) the individual's interest, (2) the government's interest,
19 and (3) the risk of erroneous deprivation of the right absent the further procedures. *Matthews*, 424
20 U.S. at 334. Applying these factors and especially considering the length of his detention and his
21 serious health issues, I find that Hernandez Gomez is entitled to a bond hearing.

22 **A.  Individual's Interest**

23 The "main private interest at stake" is indisputably Hernandez Gomez's interest in
24 "'[f]reedom from imprisonment—from government custody, detention, or other forms of physical
25 restraint.'" *Perera v. Jennings*, 2021 WL 2400891 * 4 (quoting *Zadvydas v. Davis*, 533 U.S. 678,
26 690 (2001)). Hernandez Gomez, like the petitioner in *Perera*, "has an overwhelming interest
27 here—regardless of the length of his immigration detention—because 'any length of detention
28 implicates the same' fundamental rights." *Id*. (quoting *Rajnish v. Jennings*, No. 3:20-cv-07819-

1  WHO, 2020 WL 7626414, at *6 (N.D. Cal. Dec. 22, 2020)).  That interest is not extinguished

2  because Hernandez Gomez is detained under § 1226(c).  *See Pham v. Becerra*, Case No. 23-cv-

3  01288-CRB, March 31, 2023 Order at 10-11.  Here, that interest is heightened given the length of

4  his detention without a bond hearing and his apparent worsening health, which according to

5  Hernandez Gomez cannot be managed at Mesa Verde.  *See* Reply, Exs. AA, BB; *cf. Rajnish v.*

6  *Jennings*, No. 3:20-cv-07819-WHO, 2020 WL 7626414, *4 (N.D. Cal. Dec. 22, 2020) ("Rajnish

7  has presented evidence that his prolonged detention has resulted in a degradation of his mental

8  health.").

9        The government contends that Hernandez Gomez cannot establish that his detainment

10  violates his fundamental interests when requests for continuances or for extra time by him and his

11  counsel cover at least 9 months of the alleged 15 month detention period.  The period of those

12  requests and their admitted purpose do not demonstrate any purposeful intent to delay by

13  Hernandez Gomez, but instead allow for his counsel to be an effective advocate.  The duration and

14  frequency of these requests do not diminish his significant liberty interest in his release or his

15  irreparable injury of continued detention without a bond hearing.  *See Masood v. Barr*, No. 19-

16  CV-07623-JD, 2020 WL 95633, at *3 (N.D. Cal. Jan. 8, 2020) ("The BIA appeal and remand

17  motion are perfectly legitimate proceedings he is legally entitled to pursue, and it ill suits the

18  United States to suggest that he could shorten his detention by giving up these rights and

19  abandoning his asylum application.").

20      **B.**    **Government's Interest**

21        The government has an undeniable, significant interest in detention for individuals who are

22  potentially removable given convictions of aggravated felony crimes of violence.  But the interest

23  "at stake in this motion is the ability to detain Hernandez Gomez without providing him with

24  another bond hearing, not whether the government may continue to detain him."  *Lopez Reyes v.*

25  *Bonnar*, 362 F. Supp. 3d 762, 777 (N.D. Cal. 2019).  "Requiring the government to provide

26  [petitioner] with a bond hearing does not meaningfully undermine the government's interest in

27  detaining non-citizens who pose a danger to the community or are a flight risk."  *Perera*, 2021 WL

28  2400981, at *5.  The government's interest here is low.

### C. Risk of Erroneous Deprivation

Given the length of time of Hernandez Gomez's detention as well as his uncontested and apparently worsening medical conditions, an even slight risk of an erroneous deprivation of his liberty weighs in favor of relief. As he notes, he is not under a final order of deportation (the prior order having been reversed by the BIA) and he has recently undergone a competency evaluation in support of his request for relief from removal. Given the ongoing proceedings that he is pursing with diligence, in light of his significant medical conditions, and considering his record of excellent behavior and successful rehabilitation efforts during his incarceration, I find that the risk of an erroneous deprivation, as well as the likelihood of irreparable injury, is high.

The *Matthews* factors weigh heavily in support of granting Hernandez Gomez immediate relief, here requiring the government to provide him a bond hearing. That ICE has repeatedly rejected his administrative requests for release is not a substitute for an individualized bond hearing. *See, e.g., Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414, at *9 (N.D. Cal. Dec. 22, 2020) (the fact that a petitioner could apply for "emergency relief due to COVID-19 in the form of release while habeas petitions are pending," was not "a replacement for an individualized determination by an IJ at which the government bears the burden of proof about being permitted to be out on bond generally.").

### III. BURDEN OF PROOF

Finally, I agree with my colleagues that under *Singh v. Holder*, 638 F.3d 1196, 1203 (9th Cir. 2011)), the burden of proof on whether Hernandez Gomez is a flight risk or presents a danger to the community if released rests on the government, despite the fact that Hernandez Gomez is detained under § 1226(c). *See Pham v. Becerra*, Case No. 23-cv-01288-CRB, March 31, 2023 Order at 13-14 (detained under § 1226(c)); *Salesh P. v. Kaiser*, No. 22-CV-03018-DMR, 2022 WL 17082375, at *9 (N.D. Cal. Nov. 18, 2022 ("At the hearing, the government must justify his continued detention [under § 1226(c)] by establishing by clear and convincing evidence that he is a flight risk or a danger to the community pursuant"); *Perera v. Jennings*, 598 F. Supp. 3d 736, 747 (N.D. Cal. 2022) (same § 1226(c)); *see also Rajnish v. Jennings*, No. 3:20-CV-07819-WHO, 2020 WL 7626414 *5-7 (N.D. Cal. Dec. 22, 2020) (placing the burden of proof on flight risk and

danger to the community on the government, even in an initial § 1226(a) bond hearing).

## CONCLUSION

I GRANT Hernandez Gomez's request for TRO and his Petition in part, and ORDER that the government provide him with a constitutionally compliant bond hearing within fourteen days of the date of this Order. The government shall have the burden of proof by clear and convincing evidence.

**IT IS SO ORDERED.**

Dated: April 4, 2023



William H. Orrick
United States District Judge